Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/03/2017 09:14 AM CDT

Mutual of Omaha Bank, appellee, v. Robert W.
Watson, appellant, and Shona Rae Watson,
appellee, formerly husband and wife, and
Community Bank of Lincoln, Trustee
and beneficiary, et al., appellees.

___ N.W.2d ___

Filed August 11, 2017.    No. S-16-906.

1. **Actions: Foreclosure: Equity.** An action to foreclose on real estate is
   an action in equity.
2. **Equity: Appeal and Error.** On appeal from an equity action, an appel-
   late court decides factual questions de novo on the record and, as to
   questions of both fact and law, is obligated to reach a conclusion inde-
   pendent of the trial court's determination.
3. **Contracts: Homesteads: Acknowledgments: Conveyances.** A valid
   acknowledgment of both spouses must appear on the face of an instru-
   ment purporting to convey or encumber the homestead of a married
   person or the instrument is void.
4. **Property: Mortgages: Deeds: Debtors and Creditors.** In considering
   the use of property as security for a debt, a deed of trust that a buyer
   gives for the purchase money of real property is generally treated the
   same as a mortgage that a buyer gives for the same purpose.
5. **Mortgages: Deeds: Security Interests: Sales.** A purchase-money mort-
   gage refers to a security interest that a buyer gives for the unpaid pur-
   chase money on a sale of land, as part of the same transaction as the
   deed, when its funds are actually used to buy the land.
6. **Mortgages: Title: Sales.** A purchase-money mortgage can refer to a
   mortgage that a buyer gives to the seller or to a third-party lender in
   order to acquire title to real estate or to make improvements to a prop-
   erty, if the mortgage is given as part of the same transaction in which
   the title is acquired.
7. **Mortgages: Deeds: Security Interests: Homesteads: Foreclosure.**
   Because courts normally treat the deed to the mortgagor and the

security interest in the property as being executed simultaneously, a homestead claim will not defeat an action to foreclose a purchase-money mortgage.

8. **Mortgages: Acknowledgments.** A mortgage given by a married person for the purchase money of land, delivered at the same time of the purchase, is not invalid because it was not executed and acknowledged by the person's spouse.

9. **Homesteads.** The validity of a homestead right rests on a present right of occupancy or possession.

10. **Mortgages: Security Interests: Vendor and Vendee.** When a purchaser must obtain a purchase-money mortgage to acquire real property, the purchaser cannot show a present right of occupancy or possession until after he or she gives the lender the security interest.

11. **Homesteads: Security Interests: Vendor and Vendee.** Restrictions on the encumbrance of a homestead without a spouse's consent or signature do not invalidate a security interest in the property that a purchaser concurrently gives for its purchase price.

Appeal from the District Court for Lancaster County: John A. Colborn, Judge. Affirmed.

Robert W. Watson, pro se.

John D. Stalnaker and Robert J. Becker, of Stalnaker, Becker & Buresh, P.C., for appellee Mutual of Omaha Bank.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Funke, J.

## I. NATURE OF CASE

The appellant, Robert W. Watson (Watson), appeals from the district court's summary judgment orders that determined Mutual of Omaha Bank (Mutual) held a valid and enforceable deed of trust against Watson's homestead property. The court determined that the instrument, the primary deed of trust, had first priority as an encumbrance on the property, ordered an execution sale, and foreclosed Watson from asserting any interest in the property.

Both Watson and his then-spouse, Shona Rae Watson, signed the primary deed of trust, but the notary did not certify that Shona had acknowledged the instrument. The notary did certify that Watson and Shona had both acknowledged a secondary deed of trust before the notary on the same day. Watson contends that the court erred in reading these two deeds of trust together to conclude that Watson and Shona intended to encumber their homestead through the primary deed of trust.

In our de novo review of the record, we conclude that even if the court erred in that conclusion, it nonetheless reached the correct result. The undisputed facts show that Watson and Shona could not have acquired title to the property except by giving a security interest for the purchase money through the primary and secondary deeds of trust. Accordingly, the acknowledgment requirement under the homestead statutes did not preclude enforcement of the primary deed of trust and Watson's homestead interest was subject to the seniority of that instrument. We affirm.

## II. BACKGROUND

### 1. HISTORICAL FACTS

Watson was the manager of Reserve Design, LLC, a company which designed, built, and sold homes in Lancaster County, Nebraska. In April 2008, Watson, as the manager of Reserve Design, executed a deed of trust to secure a loan or line of credit from Cattle National Bank and Trust Company (Cattle National). Under the deed of trust, Reserve Design conveyed a residential property in Lancaster County to Cattle National as trustee and beneficiary if Reserve Design defaulted on its loan obligations. The maximum loan amount was $525,000.

On October 26, 2009, Watson and Shona purchased the same home, which Reserve Design had built but had been unable to sell. Watson and Shona were both members of Reserve Design, but they purchased the home in their personal

capacities. The property became their homestead. On October 26, Watson executed and delivered a promissory note for $417,000 and a second promissory note for $118,414.50 to Community Bank of Lincoln (Community Bank) to fund the purchase price of the residential property and to pay off the prior indebtedness owed to Cattle National by Reserve Design. Upon receiving the payoff, Cattle National released its deed of trust for the property.

Watson and Shona signed the primary deed of trust to secure the $417,000 note and a secondary deed of trust to secure the $118,414.50 note. The instruments conveyed the same property in trust that had been security for the deed of trust in favor of Cattle National. Angela Schwartz, a Community Bank officer, notarized the instruments, but her certification on the primary deed of trust stated that only Watson had acknowledged the instrument before her. That same day, Community Bank assigned the primary deed of trust to TierOne Bank.

Later on October 26, 2009, Watson signed an addendum to a settlement statement in which he verified that $532,140.08 was the payoff to Cattle National. The next day, October 27, Community Bank transferred by wire $532,140.08 to Cattle National.

On November 5, 2009, Community Bank recorded the primary deed of trust and the assignment. A title insurance company issued a title insurance policy, which stated that the insured was TierOne Bank, and its successors or assignees. Subject to exclusions, the policy covered the insured against defects in the deed caused by various circumstances, including "a document affecting Title not [being] properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered."

After TierOne Bank was placed in receivership in June 2010, the receiver sold TierOne Bank's servicing rights to a different bank. In October, the receiver and the other bank assigned all their rights in the primary deed of trust to Mutual.

Watson eventually defaulted on the note, and in January 2013, Mutual brought suit for judicial foreclosure.

On December 16, 2013, Mutual deposed Shona. She and Watson had divorced in 2010, and, at some point, she moved to Missouri. She stated that they had purchased a new home while they were married, but she did not know how the financing was handled. She agreed that her signature appeared to be on the primary deed of trust. But she did not recall any significant facts regarding the execution: i.e., signing the document, being at the closing, which bank she would have been at, or whether a notary was present. She said that Watson would just tell her when to show up and sign papers if he needed her signature and that this happened several times while they were married. She said that she did not know the purpose of the documents. She also did not recall signing the secondary deed of trust for Community Bank but agreed that it looked like her signature.

On December 31, 2013, an unspecified party filed a "Corrective Deed of Trust" that purported to correct Schwartz' certification for the primary deed of trust. The new certification stated that on October 26, 2009, the primary deed of trust had been acknowledged before Schwartz by both Watson and Shona. Schwartz' statement was undated, and neither Watson nor Shona signed the corrective deed.

In a 2015 deposition, Watson testified that he could not recall (1) signing the primary deed of trust, (2) whether he had signed the loan documents at Community Bank, (3) whether Shona was present, or (4) whether the loan officer was present when he signed them. Watson said that he had sometimes signed loan documents at his office or his home. He admitted that the signature on Mutual's copy of the primary deed of trust looked like his.

## 2. Procedural History

Mutual filed its operative amended complaint in January 2014 in which it alleged that Watson had failed to "make

the payments . . . which became due on May 1, 2012, and thereafter" and that Mutual had elected to declare the whole indebtedness due at once. It alleged that it was the holder of a deed of trust that "is, or in equity should be determined to be, a first lien" on the property. Mutual also sought an accounting, a determination that any other interests in the property were junior to its interest, and a judicial foreclosure sale of the property.

Alternatively, Mutual sought a declaratory judgment and equitable subrogation. It alleged that the omission of Shona's acknowledgment in the 2009 primary deed of trust had been corrected by the 2013 corrective deed of trust and that the corrective deed should be equitably subrogated to the first priority position of the primary deed of trust.

Watson filed an answer with affirmative defenses and counterclaims. Generally, he sought a setoff for Mutual's wrongful conduct against any amount that the court found Watson owed to Mutual. First, Watson alleged that Mutual had breached a contractual duty to him under the title insurance policy by commencing a foreclosure action against him. Specifically, he asserted the following: (1) Watson had purchased title insurance to insure the lender against defects in the primary deed of trust, and after the policy was issued, the insurer was liable for any defects; (2) by accepting title insurance, Mutual had agreed that it could not maintain an action against Watson to cure defects in the primary deed of trust; (3) Mutual had a contractual duty under the policy to seek remuneration from the title insurer for defects; and (4) Mutual admitted in a trial brief that it had filed a claim against its title insurer.

Second, Watson alleged that Mutual and the title insurer's agent in Nebraska had colluded to force a judicial sale of his homestead property despite a facial defect in the deed of trust. He alleged that the title insurer had provided legal services to Mutual to protect its own interests in avoiding payment of a claim by Mutual.

Third, Watson sought a judgment declaring that Mutual had contractually indemnified him against any claim for insured conditions and that Mutual's only claim for defects in the deed of trust was against its title insurer. He sought general and special damages.

Mutual moved to dismiss Watson's counterclaims, and the court sustained that motion, finding that Watson was not the insured under the title insurance policy. It rejected Watson's claim that he was a coinsured or an implied insured under the policy because he had paid the premiums and was listed as the title owner of the property. It concluded that Mutual was not seeking damages from Watson for title defects; it was seeking a judicial foreclosure because of Watson's default on the loan. It concluded that the policy covered only Mutual and that Watson was not entitled to any of its benefits.

The court also rejected Watson's argument that the title insurance policy and the primary deed of trust should be construed as one instrument. It concluded that provisions in the deed of trust and title insurance policy, when read together, showed that the parties did not intend for Watson to be a coinsured or covered by the policy. Instead, Watson's payment of the insurance premiums was merely a condition of the loan.

The court also rejected Watson's collusion claim. It reasoned that under the title insurance policy, the insurer had the right to take any action to establish title or to reduce loss or damages to its insured, which actions would not be treated as an admission of liability or waiver of any provision of the policy. The court concluded that these provisions showed Mutual had a right to receive legal assistance from the insurer.

Finally, the court rejected Watson's requests for a declaratory judgment, a setoff, and special damages, because his requests depended on the validity of his contract and collusion counterclaims, which claims the court rejected. It dismissed Watson's counterclaims with prejudice.

Watson then filed a second amended answer in which he reasserted some of his affirmative defenses and a setoff claim.

At some point, Watson moved for summary judgment and
Mutual moved for partial summary judgment. But because
Watson did not request any motions for the transcript on
appeal, the record contains only the court's orders.

### (a) First Summary Judgment

In December 2015, the court ruled on Watson's motion
for summary judgment and Mutual's motion for partial sum-
mary judgment. It found that the proceeds from the primary
and secondary notes were used to pay off Reserve Design's
indebtedness to Cattle National, for the purpose of paying the
purchase price.

The court rejected Watson's argument that the homestead
of a married person cannot be encumbered unless the instru-
ment is executed and acknowledged by both the husband and
the wife. It agreed with Mutual that the primary deed of trust
should be construed together with the secondary deed of trust.
It considered the general rule that instruments executed at the
same time, by the same parties, for the same purpose, and dur-
ing the same transaction are treated as one instrument and con-
strued together.[1] The court cited a 1922 case in which a signed
purchase contract for the sale of a homestead was enforced
against the purchaser despite the lack of the husband's and
wife's acknowledgments, because they signed it at the same
that they signed and duly acknowledged a warranty deed to
convey the property.[2] Relying on this authority, the court con-
cluded that the defective acknowledgment in the primary deed
of trust was not fatal.

The court noted that Watson had executed the primary and
secondary promissory notes on the same day, Watson and
Shona had both signed the primary and secondary deeds of
trust, and both of their signatures had been acknowledged on

---

[1] See, e.g., *In re Estate of West*, 252 Neb. 166, 560 N.W.2d 810 (1997).

[2] See *Farmers Investment Co. v. O'Brien*, 109 Neb. 19, 189 N.W. 291
(1922).

the secondary deed of trust. It reasoned that Community Bank would not have made either loan without a corresponding deed of trust and that Watson's and Shona's signatures on the deeds of trust showed their joint consent and intent to encumber their homestead. It ruled that the documents should be read together to accurately reflect the parties' intent.

The court concluded that Watson had failed to present evidence creating a genuine issue of fact whether Mutual's lien had first priority. The court further stated that even if Watson had done so, Mutual had a first priority encumbrance on the property under its theory of equitable subrogation. It found that Community Bank had made the loans to pay off Reserve Design's debts, with the intent and understanding that Cattle National's deed of trust would be released and that Community Bank's primary deed of trust would have first priority status. The court overruled Watson's motion for summary judgment, granted Mutual's motion for partial summary judgment, and determined that the primary deed of trust had first priority as an encumbrance on the property.

(b) Second Summary Judgment

In September 2016, the court issued an order in which it ruled on Watson's motion to dismiss and Mutual's motion for summary judgment and a default judgment. According to the court's order, Mutual sought a default judgment against other potential creditors, which motion the court granted.

In overruling Watson's motion to dismiss, the court rejected his argument that Mutual had failed to name all the necessary parties because it had not named the title insurer and its Nebraska agent insurer. The court reasoned that it had dismissed Watson's counterclaims related to the title insurer because Watson was not an insured under the policy, which did not preclude Mutual from seeking a first priority encumbrance for the primary deed of trust.

The court concluded that the only remaining issue was whether Watson and Shona were in default and concluded

that they clearly were. It found that Watson and Shona owed Mutual $533,459.36 in principal, interest, and costs. It ordered an execution sale and foreclosed Watson and Shona from asserting any interest in the property.

## III. ASSIGNMENTS OF ERROR

Watson assigns that the court erred as follows:

(1) in determining that the primary deed of trust was valid and enforceable;

(2) in determining that the primary deed of trust and secondary deed of trust should be read together;

(3) in concluding that it had jurisdiction to hear Mutual's request for a declaratory relief;

(4) in granting Mutual a judicial foreclosure; and

(5) in dismissing Watson's counterclaims.

## IV. STANDARD OF REVIEW

[1,2] An action to foreclose on real estate is an action in equity.[3] On appeal from an equity action, an appellate court decides factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the trial court's determination.[4]

## V. ANALYSIS

### 1. Enforceability of Primary Deed of Trust Under Homestead Statutes

Watson contends that the primary deed of trust failed to satisfy the requirements of Neb. Rev. Stat. §§ 76-211 and 76-216 (Reissue 2009). Both of these sections are part of Nebraska's statutory scheme dealing with instruments which convey interests in real property. Section 76-211 governs the execution

---

[3] See, e.g., *Twin Towers Condo. Assn. v. Bel Fury Invest. Group*, 290 Neb. 329, 860 N.W.2d 147 (2015); *Travelers Indemnity Co. v. Heim*, 218 Neb. 326, 352 N.W.2d 921 (1984).

[4] *Poullos v. Pine Crest Homes*, 293 Neb. 115, 876 N.W.2d 356 (2016).

requirements for a deed: "Deeds of real estate, or any interest therein, in this state, except leases for one year or for a less time, if executed in this state, must be signed by the grantor or grantors, being of lawful age, and be acknowledged or proved and recorded . . . ." A deed is defined as "every instrument in writing by which any real estate or interest therein is created, aliened, mortgaged or assigned, or by which the title to any real estate may be affected in law or equity, except last wills and leases for one year or for a less time."[5]

Section 76-216 provides that a grantor must acknowledge a deed "with an acknowledgment as defined in section 64-205." Neb. Rev. Stat. § 64-205 (Reissue 2009) sets out the requirements for a notarial acknowledgment. As relevant here, under § 64-205(4), an authorized officer must know or have sufficient evidence to conclude that the person acknowledging his or her execution of an instrument is the same person who is named in the instrument or the acknowledgment certificate.

However, this court has long held that "'[a] deed to real estate, executed and delivered, is valid between the parties, though not lawfully acknowledged nor witnessed, and is sufficient to convey the land described therein, with the exception of the homestead of the grantor.'"[6]

The homestead exception exists because of the statutory requirements under Neb. Rev. Stat. § 40-104 (Reissue 2008). Section 40-104 sets forth that the homestead of a married person cannot be conveyed or encumbered unless the instrument by which it is conveyed or encumbered is executed and acknowledged by both spouses. The statute does not provide for proving a conveyance or encumbrance without an acknowledgment of the instrument.

---

[5] Neb. Rev. Stat. § 76-203 (Reissue 2009).

[6] *Blum v. Poppenhagen*, 142 Neb. 5, 12, 5 N.W.2d 99, 103 (1942), quoting *Wilson v. Wilson*, 85 Neb. 167, 122 N.W. 856 (1909). Accord, *Lindquist v. Ball*, 232 Neb. 546, 441 N.W.2d 590 (1989); *Mazanec v. Lincoln Bonding & Ins. Co.*, 169 Neb. 629, 100 N.W.2d 881 (1960).

In a long line of cases, this court has held that an acknowledgment is essential when conveying a homestead.[7] Similarly, in cases extending back to the 1800's, this court has held that an instrument purporting to convey or encumber the homestead of a married person is void if it is not executed and acknowledged by both the husband and the wife.[8]

[3] Mutual contends that Schwartz' corrective deed of trust was a sufficient certification that she had acknowledged the primary deed of trust 4 years earlier and that Watson presented no evidence to show that he and Shona had not acknowledged the instrument. Mutual cites no authority for this argument, and it is contrary to well-established case law. A valid acknowledgment of both spouses must appear on the face of an instrument purporting to convey or encumber the homestead of a married person or the instrument is void.[9]

Mutual also argues that Schwartz' corrective deed of trust is an enforceable encumbrance standing alone, because this court has recognized the use of a corrective deed to correct defects in a recorded instrument. But the four cases that Mutual cites are not helpful. In three cases, the efficacy of the corrective deed was not at issue; nor did the corrective deed purport to validate a fatal defect that would have rendered the instrument void.[10]

---

[7] See, *In re Estate of West, supra* note 1; *Lindquist, supra* note 6; *Storrs v. Bollinger*, 111 Neb. 307, 196 N.W. 512 (1923); *Anderson v. Schertz*, 94 Neb. 390, 143 N.W. 238 (1913); *Solt v. Anderson*, 71 Neb. 826, 99 N.W. 678 (1904).

[8] See, e.g., *Krueger v. Callies*, 190 Neb. 376, 208 N.W.2d 685 (1973); *Martin v. Norris Public Power Dist.*, 175 Neb. 815, 124 N.W.2d 221 (1963); *Trowbridge v. Bisson*, 153 Neb. 389, 44 N.W.2d 810 (1950); *Storrs, supra* note 7; *Wilson, supra* note 6; *Whitlock v. Gosson*, 35 Neb. 829, 53 N.W. 980 (1892).

[9] See, *Krueger, supra* note 8; *Martin, supra* note 8; *Storrs, supra* note 7; *Anderson, supra* note 7; *Whitlock, supra* note 8.

[10] See, *McCully, Inc. v. Baccaro Ranch*, 284 Neb. 160, 816 N.W.2d 728 (2012); *State ex rel. Counsel for Dis. v. Rokahr*, 267 Neb. 436, 675 N.W.2d 117 (2004); *Gustafson v. Gustafson*, 239 Neb. 448, 476 N.W.2d 819 (1991).

In the fourth case, a grantor had gifted land to her son as a joint tenant with herself, but the deed's legal description of the property was wrong. The mistake was discovered after a feud developed between the mother and son. The son did not ask her to record a corrective deed while she was alive, but instead sought reformation of the deed after her death. In her will, she left her estate to her grandson, which meant that the disputed property would pass to her grandson if the deed were not reformed. We explained that during the grantor's lifetime, a deeded gift cannot be judicially reformed without the grantor's consent. We held that in an action against an heir or devisee after a grantor's death, a court can equitably reform a deed that gifts property only if the evidence shows that the grantor would have consented to the reformation after learning of the alleged mistake.[11] The son's evidence did not.

Mutual cites no case that supports its contention that a party benefiting from a conveyance or encumbrance of real property can unilaterally reform such instrument without presenting evidence to a court that would support a rescission or reformation. Even if such cases exist, they would not negate § 40-104's more specific requirement that both spouses execute *and* acknowledge an instrument that conveys or encumbers the homestead of a married person.

Nonetheless, in cases where a contract of sale, deed of conveyance, or encumbrance of a homestead was found void for failing to comply with execution requirements, the homestead right already existed.[12] And we find merit to Mutual's alternative argument that the acknowledgment requirement does not apply here, because Watson and Shona took title to the property subject to a purchase-money security instrument.

---

[11] See *Hohneke v. Ferguson*, 196 Neb. 505, 244 N.W.2d 70 (1976).

[12] See, e.g., *Landon v. Pettijohn*, 231 Neb. 837, 438 N.W.2d 757 (1989); *Christensen v. Arant*, 218 Neb. 625, 358 N.W.2d 200 (1984); *Wilson, supra* note 6; *Whitlock, supra* note 8.

[4,5] In considering the use of property as security for a debt, a deed of trust that a buyer gives for the purchase money of real property is generally treated the same as a mortgage that a buyer gives for the same purpose.[13] A purchase-money mortgage refers to a security interest that a buyer gives for the unpaid purchase money on a sale of land, as part of the same transaction as the deed, when its funds are actually used to buy the land.[14]

[6] A purchase-money mortgage can refer to a mortgage that a buyer gives to the seller or to a third-party lender in order to acquire title to real estate or to make improvements to a property, if the mortgage is given as part of the same transaction in which the title is acquired.[15] If a seller carries the mortgage, the instrument is called a "'vendor purchase money mortgage.'"[16] If a third party carries the mortgage, it is called a "'third party purchase money mortgage.'"[17] A purchase-money mortgage generally takes precedence over all existing and subsequent claims and liens against the mortgagor as to the property sold.[18] Notably, in making that determination, a purchase-money mortgage and deed conveying title to the mortgagor are treated as being executed simultaneously if the instruments were intended to be part of the same transaction.[19]

[7] Because courts normally treat the deed to the mortgagor and the security interest in the property as being executed simultaneously, we long ago held that a homestead claim will not defeat an action to foreclose a purchase-money mortgage.

---

[13] Restatement (Third) of Property: Mortgages, Introduction (1997); 54A Am. Jur. 2d *Mortgages* § 1 (2009).

[14] See *Commerce Savings Lincoln v. Robinson*, 213 Neb. 596, 331 N.W.2d 495 (1983).

[15] See Restatement, *supra* note 13, § 7.2.

[16] *Id.*, § 7.2, comment *a*. at 459.

[17] *Id.*

[18] *Commerce Savings Lincoln, supra* note 14.

[19] See Restatement, *supra* note 13, § 7.2, comment *b*.

Mutual correctly argues that in 1897, we addressed this issue in *Prout v. Burke*.[20]

In *Prout*, a married woman purchased a house that became the family homestead. The seller executed the deed to the property before the wife executed promissory notes and a mortgage to secure the notes, as part of the purchase price. Later, the seller's assignee sought a foreclosure, and the wife and husband defended that the mortgage was void because the husband had not executed and acknowledged it. We recognized that under the homestead statutes, a mortgage on the homestead of a married person is invalid unless the instrument is executed and acknowledged by the husband and the wife. We also recognized that the mortgage would be void if the husband and wife's homestead rights had attached to the property when only the wife executed and acknowledged the mortgage. But we treated the deed and the mortgage as though they were simultaneously executed, because they were part of the same transaction. We concluded that the wife acquired title to the property subject to the mortgagee's lien:

> [N]o homestead right existed in the [husband and wife] at the time the mortgage was given, inasmuch as the purchase of the premises and the execution of the mortgage thereon for the unpaid purchase money were parts of the same transaction, so that [the wife] acquired the title to these lots subject to the lien of this mortgage thereon. Of necessity such lien must have priority over the homestead right, since such right could not exist until after the purchase was effected. In other words, that a homestead is not acquired, within the meaning of the statute, until the claimant has obtained title of some kind to the land, or, at least, has so complied with the contract of purchase as to be in a position to demand title. It has been held that mortgage given to secure the unpaid purchase money of land executed simultaneously with the

---

[20] *Prout v. Burke*, 51 Neb. 24, 70 N.W. 512 (1897).

deed takes precedence of a judgment against the mortgagor. . . . Upon the same principle a mortgage given by a wife for the purchase money, delivered at the time of the purchase, is not invalid because [it was] not executed and acknowledged by the husband.[21]

[8] Accordingly, we held in *Prout* that a mortgage given by a married person for the purchase money of land, delivered at the same time of the purchase, is not invalid, because it was not executed and acknowledged by the person's spouse.[22]

[9-11] More recently, this court has held that the validity of a homestead right rests on a present right of occupancy or possession.[23] And when a purchaser must obtain a purchase-money mortgage to acquire real property, the purchaser cannot show a present right of occupancy or possession until after he or she gives the lender the security interest. Accordingly, it is the general rule that restrictions on the encumbrance of a homestead without a spouse's consent or signature do not invalidate a security interest in the property that a purchaser concurrently gives for its purchase price.[24]

Contrary to Watson's argument in his reply brief, Community Bank was the holder of a third-party purchase-money security instrument that Watson and Shona executed to purchase the property. Because Watson and Shona could not have acquired title until they executed the deeds of trust, they had no homestead interest until after they executed the primary deed of trust. Thus, the homestead statutes did not apply and Shona's voluntary acknowledgment could be proved by extrinsic

---

[21] *Id.* at 27, 70 N.W. at 513 (citing cases from other states). Accord *Mackiewicz v. J.J. & Associates*, 245 Neb. 568, 514 N.W.2d 613 (1994).

[22] *Prout, supra* note 20 (citing authorities).

[23] See, e.g., *Blankenau v. Landess*, 261 Neb. 906, 913, 626 N.W.2d 588, 595 (2001); *Travelers Indemnity Co., supra* note 3; *Mainelli v. Neuhaus*, 157 Neb. 392, 59 N.W.2d 607 (1953).

[24] See, Annot., 45 A.L.R. 395 (1926); 2 Joyce Palomar, Patton and Palomar on Land Titles § 398 (3d ed. 2003).

evidence. Watson does not contend that the extrinsic evidence was insufficient to show that Shona voluntarily acknowledged the instrument, and we conclude that it was sufficient.

Because we reach this conclusion, we need not address Watson's contention that the court lacked jurisdiction to provide declaratory relief because it failed to require Mutual to join the title insurer as a party. That contention is relevant only to the district court's alternative conclusion that Mutual was entitled to a first priority encumbrance on the property under its theory of equitable subrogation. Because we conclude that the primary deed of trust is valid, the court's alternative reasoning for granting relief is a moot issue.

### 2. WATSON'S ASSIGNMENT OF ERROR
### REGARDING COURT'S REJECTION OF
### HIS COUNTERCLAIMS IS MOOT

Watson contends that the court erred in dismissing his counterclaims, because Mutual and its title insurer owed him duties under the policy based on his payment of the premiums. He argues that Mutual was required to seek compensation from its insurer for defects in the primary deed of trust and that the insurer was required to pay its insured for damages resulting from the unenforceability of the instrument. Having determined that the primary deed of trust is enforceable, we need not decide whether or when a title insurer could be liable to a purchaser of real property.

### VI. CONCLUSION

Although our reasoning differs somewhat from the district court, in our de novo review of the record, we conclude that the court did not err in finding that the primary deed of trust was valid and enforceable.

AFFIRMED.