Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/23/2018 09:14 AM CST

- 266 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
ESTATES AT PRAIRIE RIDGE HOMEOWNERS ASSN. v. KORTH
Cite as 298 Neb. 266

The Estates at Prairie Ridge Homeowners Association,
a Nebraska nonprofit corporation, appellee, v.
Duane R. Korth and Kathryn A. Korth,
husband and wife, appellants.

___ N.W.2d ___

Filed December 1, 2017.    No. S-16-1108.

1. **Restrictive Covenants: Equity.** An action to enforce restrictive covenants is equitable in nature.
2. **Equity: Appeal and Error.** On appeal from an equity action, an appellate court decides factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the trial court's determination.
3. **Restrictive Covenants: Intent.** Restrictive covenants are to be construed so as to give effect to the intentions of the parties at the time they agreed to the covenants.
4. **Restrictive Covenants.** The language of restrictive covenants must be interpreted in its entirety.
5. ____. If the language of a restrictive covenant is unambiguous, the covenant shall be enforced according to its plain language, and the covenant shall not be subject to rules of interpretation or construction.
6. **Contracts: Restrictive Covenants.** As in the interpretation of a contract, a court must first determine, as a matter of law, whether the language of restrictive covenants is ambiguous.
7. **Contracts: Words and Phrases.** Ambiguity exists in a document when a word, phrase, or provision in the document has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.
8. **Restrictive Covenants.** Restrictive covenants are not favored in the law and, if ambiguous, should be construed in a manner which allows the maximum unrestricted use of the property.
9. **Restrictive Covenants: Intent.** Extrinsic evidence is not permitted to explain the terms of restrictive covenants where they are not ambiguous. Instead, the intentions of the parties must be determined from the document itself.

- 267 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
ESTATES AT PRAIRIE RIDGE HOMEOWNERS ASSN. v. KORTH
Cite as 298 Neb. 266

10. **Summary Judgment: Appeal and Error.** The denial of a motion for summary judgment is neither appealable nor reviewable.

Appeal from the District Court for Sarpy County: George A. Thompson, Judge. Reversed and remanded with directions.

John M. Walker, of Lamson, Dugan & Murray, L.L.P., for appellants.

Larry R. Forman, of Hillman, Forman, Childers & McCormack, for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, and Funke, JJ.

Cassel, J.

## I. INTRODUCTION

After homeowners repainted their residence in a blue color, a homeowners association sued to enforce restrictive covenants and the district court decreed that the house be repainted in an "earth tone." The homeowners' appeal turns on the covenants' plain language, which does not control the color of repainting. Because the covenants were not ambiguous and did not prohibit the homeowners' action, we reverse, and remand with directions.

## II. BACKGROUND

### 1. Restrictive Covenants

The Estates at Prairie Ridge, LLC (Developer), filed the restrictive covenants at issue in 2003. The covenants included prohibitions of certain "external improvement[s]" (except those specifically approved by Developer), as well as storage of anything that would be "obnoxious to the eye." They also specified that "[n]o objectionable, unlawful or offensive trade or activity shall be carried on upon any Lot nor shall anything be done thereon which may be or become a nuisance or annoyance to the neighborhood or surrounding Lots."

- 268 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
ESTATES AT PRAIRIE RIDGE HOMEOWNERS ASSN. v. KORTH
Cite as 298 Neb. 266

In 2004, Duane R. Korth and Kathryn A. Korth (Homeowners) purchased a residential lot from Developer which was subject to the restrictive covenants. Homeowners submitted plans for construction of a residence on their purchased lot to Developer as required by the covenants. After the residence was built, Homeowners spoke to Developer and proposed to paint their residence blue. Developer denied this proposal and recommended that they choose an earth-tone color instead. Homeowners ultimately painted their residence in an earth-tone color.

## 2. Alleged Violations

Ten years later, Homeowners informed a member of The Estates at Prairie Ridge Homeowners Association (the HOA) of their decision to repaint their residence a shade of blue. The parties disagreed as to whether the restrictive covenants required approval of the new paint color, and conflict ensued. Homeowners ultimately repainted their residence blue, without seeking or acquiring approval of their chosen paint color.

After the house was repainted, Developer assigned its interests under the restrictive covenants to the HOA pursuant to article II, section 1, of the covenants. As Developer's successor in interest, the HOA filed a lawsuit requesting the court to, among other things, (1) declare Homeowners to be in willful violation of certain provisions of the restrictive covenants, (2) order Homeowners to submit a substitute earth-tone color to be approved by the HOA, and (3) order Homeowners to repaint their residence in the approved color.

## 3. Motions for Summary Judgment

Before filing an answer, Homeowners filed a motion to dismiss, which was converted to a motion for summary judgment.[1] The HOA then filed its own motion for summary judgment. At a hearing, both parties presented evidence and argued that there was no genuine issue of material fact.

---

[1] See Neb. Ct. R. Pldg. § 6-1112(b)(6).

- 269 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
ESTATES AT PRAIRIE RIDGE HOMEOWNERS ASSN. v. KORTH
Cite as 298 Neb. 266

However, the court disagreed and overruled both motions. It identified issues of fact regarding the HOA's level of control over color under the restrictive covenants and whether the particular color violated the restrictive covenants.

Both parties moved for reconsideration of their motions for summary judgment. At the hearing, Homeowners principally argued that the HOA had no control over the color of their residence, because the restrictive covenants did not specifically refer to exterior paint as an improvement. The court took the matter under advisement and reviewed *Kalkowski v. Nebraska Nat. Trails Museum Found.*[2] and *Tyler v. Tyler*[3] to determine that painting the exterior of a residence can be an improvement or an ordinary repair, depending on the factual circumstances of the case. After concluding that this was a disputed factual issue, the court overruled the parties' motions. The court later overruled Homeowners' renewed motion for summary judgment on these same grounds.

## 4. Trial

At trial, an agent of Developer testified over Homeowners' objection that the intent and purpose of the restrictive covenants was to give Developer "fairly broad authority to deal with matters in [the] subdivision" and that Developer "was to be able to control color." He further testified that it was the intent of Developer to keep the development "a very natural, earth tone environment" in line with its name, The Estates at Prairie Ridge (Prairie Ridge), and have residences "blend in with the environment." However, he admitted that there was no language in the restrictive covenants specifically referencing paint color or a preference for earth tones.

---

[2] *Kalkowski v. Nebraska Nat. Trails Museum Found.*, 290 Neb. 798, 862 N.W.2d 294 (2015) (defining term "improvements" in farm lease agreement as distinguished from ordinary repair).

[3] *Tyler v. Tyler*, 253 Neb. 209, 214, 570 N.W.2d 317, 320 (1997) (painting of dwelling's exterior as "improvement" of marital home).

- 270 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
ESTATES AT PRAIRIE RIDGE HOMEOWNERS ASSN. v. KORTH
Cite as 298 Neb. 266

Current and former residents of surrounding lots also testified that they had been required to disclose exterior paint color for approval by Developer when building their residences. They all additionally testified to their opinions that the blue color chosen by Homeowners was a nuisance, an annoyance, and obnoxious.

Homeowners presented evidence that a board member of the HOA communicated there were "not currently" any restrictions on paint color in the restrictive covenants and that Homeowners were copied on the communication. The HOA board member testified that he said "not currently," because there were ongoing discussions of rewriting the covenants to specifically address paint color and clear up any ambiguity in the covenants. However, he and other board members also testified that Developer had the final say in all improvements, including paint color, until it assigned its interests in the restrictive covenants to the HOA in July 2015, at which point, the HOA had the final say in all improvements. Even so, Homeowners testified that they understood that the covenants did not include restrictions on paint color before repainting their house.

## 5. District Court Judgment

After trial, the district court entered a judgment in favor of the HOA. The court found that "[t]he evidence showed that anyone purchasing a lot and erecting a residence at Prairie Ridge needed to obtain prior approval from [Developer] for such items including square footage, septic system, paint color, garage location, etc." And, the court specifically found that Homeowners' painting of their residence was an improvement as a "permanent addition to and for the betterment of [Homeowners'] residence and the property." As such, the court concluded that they needed approval before they could repaint the residence.

The court also found that the blue color of the residence was "a nuisance, annoyance, and obnoxious to the eye," based on

- 271 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
ESTATES AT PRAIRIE RIDGE HOMEOWNERS ASSN. v. KORTH
Cite as 298 Neb. 266

the cumulative testimony of surrounding lot owners expressing the opinion that it "clashed with the neighborhood" and "does not fit in." The court concluded that this violated several restrictive covenants. It therefore ordered Homeowners to submit a substitute color in an earth tone reasonably acceptable to the HOA by a certain date and then repaint their residence within 30 days after approval of the substitute color.

Homeowners timely appealed, and we moved the appeal to our docket.[4]

## III. ASSIGNMENTS OF ERROR

Homeowners assign, reordered, restated, and combined, that the district court erred when it (1) construed sections 2(a), 15, and 16 of article I of the covenants to give the HOA the ability to control the paint color of Prairie Ridge residences; (2) failed to find that the terms "or other external improvement," "nuisance or annoyance," and "obnoxious to the eye" were ambiguous; (3) failed to construe ambiguous provisions in a manner which allowed the maximum unrestricted use of their property; (4) determined that Homeowners violated sections 2(a), 15, 16, and 14 of article I of the covenants; (5) determined that the restrictive covenants vested the HOA's predecessor in interest with "absolute and sole discretion concerning the use and makeup of the land"; and (6) ruled that genuine issues of material fact existed as to whether the painting of a residence was an "external improvement" or a "repair" and whether exterior paint color may be a "nuisance" or an "annoyance" to the neighborhood or surrounding lots.

## IV. STANDARD OF REVIEW

[1,2] An action to enforce restrictive covenants is equitable in nature.[5] On appeal from an equity action, an appellate

---

[4] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2016).

[5] See, *Skyline Woods Homeowners Assn. v. Broekemeier*, 276 Neb. 792, 758 N.W.2d 376 (2008); *Boyles v. Hausmann*, 246 Neb. 181, 517 N.W.2d 610 (1994).

- 272 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
ESTATES AT PRAIRIE RIDGE HOMEOWNERS ASSN. v. KORTH
Cite as 298 Neb. 266

court decides factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the trial court's determination.[6]

## V. ANALYSIS

The principal issue in this case is whether Homeowners' repainting their residence a shade of blue without approval by Developer violated the restrictive covenants on their property. Homeowners argue that the restrictive covenants relied upon by the HOA are silent regarding exterior paint color. In the alternative, they argue that if the language is ambiguous, the covenants must be construed against the drafter (Developer) and its successors in interest.

### 1. Restrictive Covenants

Our analysis depends upon the meaning of the relevant restrictive covenants. Thus, we begin by recalling basic principles of the governing law.

[3-5] Restrictive covenants are to be construed so as to give effect to the intentions of the parties at the time they agreed to the covenants.[7] The language of restrictive covenants must be interpreted in its entirety.[8] If the language of a restrictive covenant is unambiguous, the covenant shall be enforced according to its plain language, and the covenant shall not be subject to rules of interpretation or construction.[9]

[6,7] Thus, as in the interpretation of a contract, a court must first determine, as a matter of law, whether the language of restrictive covenants is ambiguous.[10] Ambiguity exists in a

---

[6] *Mutual of Omaha Bank v. Watson*, 297 Neb. 479, 900 N.W.2d 545 (2017).

[7] *Southwind Homeowners Assn. v. Burden*, 283 Neb. 522, 810 N.W.2d 714 (2012).

[8] See *Wessel v. Hillsdale Estates, Inc.*, 200 Neb. 792, 266 N.W.2d 62 (1978).

[9] *Southwind Homeowners Assn. v. Burden, supra* note 7.

[10] See *David Fiala, Ltd. v. Harrison*, 290 Neb. 418, 860 N.W.2d 391 (2015).

- 273 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
ESTATES AT PRAIRIE RIDGE HOMEOWNERS ASSN. v. KORTH
Cite as 298 Neb. 266

document when a word, phrase, or provision in the document has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.[11]

[8] However, as Homeowners correctly argue, ambiguity must be interpreted in their favor. Restrictive covenants are not favored in the law and, if ambiguous, should be construed in a manner which allows the maximum unrestricted use of the property.[12]

The district court held that Homeowners violated four restrictive covenants: article I, sections 2(a), 15, 16, and 14. Therefore, we must first address whether each covenant is ambiguous in the light of the entire document and then determine whether the covenants governed the exterior paint color of Prairie Ridge residences.

### (a) Article I, Section 2

Article I, section 2, is a general use and building restrictive covenant. That section states in pertinent part:

> No residence, building, fence, wall, driveway, patio, patio enclosure, swimming pool, dog house, tree house, pool house, antenna, satellite receiving stations, dishes or discs, flag poles, solar heating or cooling devices, tool or storage shed, or other external improvement . . . shall be constructed, erected, placed or permitted to remain on any Lot . . . except Improvements which have been approved by [Developer.]

Section 2(a) also requires that any "Lot owner desiring to erect an Improvement on such Lot shall submit construction plans to [Developer]." This language is unambiguous.

Homeowners' residence was "constructed," "erected," "placed," and "permitted to remain" in 2004. Homeowners submitted construction plans at that time. The "improvement"

---

[11] See *Frohberg Elec. Co. v. Grossenburg Implement*, 297 Neb. 356, 900 N.W.2d 32 (2017).

[12] *Southwind Homeowners Assn. v. Burden, supra* note 7.

- 274 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
ESTATES AT PRAIRIE RIDGE HOMEOWNERS ASSN. v. KORTH
Cite as 298 Neb. 266

was made at that time. At the time of repainting 10 years later, Homeowners were not "desiring to erect an Improvement"; it had been erected 10 years earlier. Sections 2 and 2(a) are silent as to painting the exterior of a residence. And, exterior paint, in and of itself, is not something which is typically "constructed," "erected," "placed," or "permitted to remain" on land. Thus, we conclude that repainting is not governed by the plain language of the covenant. This is in line with cases from other jurisdictions in which courts have found paint color governed by general use and building restrictions only where "'exterior design and color'" or "'color scheme'" is specifically referenced in the covenant.[13]

Nonetheless, the HOA advances three arguments in support of its allegation that painting the exterior of a residence is an "external improvement" within the plain meaning of article I, section 2. None are persuasive.

First, the HOA argues that exterior painting is an improvement, because it is a "'betterment of real property that enhances its capital value and that involves the expenditure of labor and money . . . .'"[14] It cites to our opinion in *Kalkowski v. Nebraska Nat. Trails Museum Found.*, which generally defined the term "improvements" in two ways; however, our opinion used these broad definitions in the context of a farm lease agreement permitting a tenant to remove "improvements" from the land at the expiration of the lease.[15] Here, the covenants define "external improvements" by the list of examples. And paint or paint color is simply not in that list. Moreover, the HOA deemphasizes critical aspects of our broad definitions in *Kalkowski*. Our "betterment" definition spoke not just of enhancement to

---

[13] See, e.g., *Village of Pheasant Run v. Kastor*, 47 S.W.3d 747, 751 (Tex. App. 2001). See, also, e.g., *West Hill Colony v. Sauerwein*, 138 N.E.2d 403 (Ohio App. 1956).

[14] *Kalkowski v. Nebraska Nat. Trails Museum Found., supra* note 2, 290 Neb. at 805, 862 N.W.2d at 301.

[15] *Id.*

- 275 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
ESTATES AT PRAIRIE RIDGE HOMEOWNERS ASSN. v. KORTH
Cite as 298 Neb. 266

capital value and expenditure of labor and money, but also described such an improvement as "'designed to make the property more useful or valuable as distinguished from ordinary repairs.'"[16] And another definition of "improvements" spoke of "'"enhanc[ing] the value of premises *permanently* for general uses."'"[17] Repainting does not fit either definition from *Kalkowski*. Repainting does not permanently enhance value. And it amounts to an ordinary, recurring repair. Under the HOA's application of *Kalkowski*, a tenant who painted the landlord's barn would be entitled to remove the barn or at least the paint. That would be absurd. To the extent that the definitions of *Kalkowski* have any application here, they inform us that painting is not an "improvement."

Second, the HOA suggests that this court has already specifically determined that the painting of the exterior of a residence is an "improvement" in *Tyler v. Tyler*.[18] But we did so in an entirely different context, where we attempted to credit a husband for value personally contributed to a marital home. We are not persuaded that this has any application in the context of restrictive covenants.

[9] Third, the HOA argues that Homeowners' initial disclosure to Developer of their intent to paint their residence blue in 2005 is evidence of the parties' intent that exterior paint color is an external improvement. But at oral argument, the HOA reiterated its argument that the covenants were not ambiguous. Extrinsic evidence is not permitted to explain the terms of restrictive covenants where they are not ambiguous.[19] Instead, the intentions of the parties must be determined from the document itself.[20]

---

[16] *Id.*

[17] *Id.* (emphasis supplied).

[18] *Tyler v. Tyler, supra* note 3.

[19] See *In re Claims Against Pierce Elevator*, 291 Neb. 798, 868 N.W.2d 781 (2015).

[20] See *id.*

Because we have determined that exterior paint color is not subject to the plain language of article I, section 2, we conclude that Homeowners did not violate the covenant when they repainted their residence without first seeking and acquiring approval from Developer.

### (b) Article I, Section 15

Article I, section 15, states: "No objectionable, unlawful or offensive trade or activity shall be carried on upon any Lot nor shall anything be done thereon which may be or become a nuisance or annoyance to the neighborhood or surrounding Lots." Because there is nothing inherently ambiguous in this language, we must enforce the covenant by its plain language.

The covenant's plain language is limited to trade or activity on a lot. Nowhere does it describe external paint, color, or siding as a trade, activity, or something which may be done on a lot. And, while numerous Prairie Ridge residents opine that the paint color at issue is a nuisance or annoyance, their opinions cannot vary the plain language of the covenant. We find no merit to the HOA's reliance on article I, section 15.

### (c) Article I, Section 16

The applicable provision in article I, section 16, prohibits the "storage of any property or thing that . . . will be obnoxious to the eye." Though what constitutes "obnoxious to the eye" may be subjective, the relevant language of the covenant is not ambiguous and clearly indicates that it is limited to the "storage" of things on Prairie Ridge lots.

The parties do not contest that exterior paint color is not something "stor[ed]" on land. Rather, the HOA would apparently have us ignore the limiting language "storage of any property or thing" to find that the covenant prohibits all things obnoxious to the eye. This would effectively rewrite the covenant. Therefore, we decline to adopt the HOA's interpretation and we adhere to the plain language.

- 277 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
ESTATES AT PRAIRIE RIDGE HOMEOWNERS ASSN. v. KORTH
Cite as 298 Neb. 266

Because a residence's exterior paint color is not something which is stored on the property, it is not governed by article I, section 16. Thus, Homeowners did not violate the covenant when they repainted their residence blue.

### (d) Article I, Section 14

The last covenant, article I, section 14, provides: "Each Lot owner shall comply with all county and state health requirements and permits, and observe all rules and regulations of all lawfully constituted authorities in the use and ownership of such Lot."

The district court apparently found Homeowners violated this covenant by failing to observe the rules provided in the restrictive covenants listed above, since no other evidence of alleged noncompliance was presented at trial. But because Homeowners did not violate any other restrictive covenants and the evidence does not show any other violations of laws, rules, or regulations, it necessarily follows that Homeowners did not violate article I, section 14.

Although the plain language of the restrictive covenants does not control the color of repainting of an existing residence, the other residents are not without a potential remedy. Article III, section 3, states that the covenants "may be amended by and [sic] instrument signed by the owners of not less than seventy-five percent (75%) of the Lots covered by [the covenants]." It is not our function to in effect amend the covenants by interpretation or construction contrary to the plain meaning of the language used.

### 2. Remaining Assignment of Error

[10] We do not address Homeowners' remaining assignment of error, because it challenges the denial of their motion for summary judgment. The denial of a motion for summary judgment is neither appealable nor reviewable.[21]

---

[21] *Caruso v. Parkos*, 262 Neb. 961, 637 N.W.2d 351 (2002).

## VI. CONCLUSION

The restrictive covenants at issue were not ambiguous and did not apply to Homeowners' repainting of their residence. Because Homeowners did not violate any restrictive covenants, we reverse, and remand with directions to the district court to enter judgment in Homeowners' favor.

REVERSED AND REMANDED WITH DIRECTIONS.

WRIGHT and KELCH, JJ., not participating.