Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/09/2023 09:08 AM CDT

Pine Tree Neighborhood Association, appellee,
v. Charles Moses and Melissa Hill,
husband and wife, appellants.

___ N.W.2d ___

Filed June 9, 2023.    No. S-22-284.

1. **Restrictive Covenants: Equity.** An action to enforce restrictive covenants is equitable in nature.
2. **Equity: Appeal and Error.** On appeal from an equity action, an appellate court decides factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the trial court's determination.
3. **Summary Judgment: Appeal and Error.** An appellate court reviews a district court's grant of summary judgment de novo.
4. ____: ____. An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.
5. **Restrictive Covenants.** Whether undisputed activities on the property violate a restrictive covenant presents an issue of law.
6. **Summary Judgment: Jurisdiction: Appeal and Error.** When reviewing cross-motions for summary judgment, an appellate court acquires jurisdiction over both motions and may determine the controversy that is the subject of those motions; an appellate court may also specify the issues as to which questions of fact remain and direct further proceedings as the court deems necessary.
7. **Summary Judgment.** Cross-motions for summary judgment should generally be considered separately, applying the same familiar standards that govern all summary judgment motions.

8. ____. Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

9. **Summary Judgment: Proof.** The party moving for summary judgment must make a prima facie case by producing enough evidence to show the movant would be entitled to judgment if the evidence were uncontroverted at trial. If the moving party makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law.

10. **Restrictive Covenants: Intent.** When enforcing restrictive covenants, they are to be construed so as to give effect to the intentions of the parties at the time they agreed to the covenants.

11. **Restrictive Covenants.** The language of a restrictive covenant must be interpreted in its entirety, and if it is unambiguous, the covenant shall be enforced according to its plain language and shall not be subject to rules of interpretation or construction.

12. **Restrictive Covenants: Intent.** There are generally three requirements for a covenant, whether affirmative or restrictive, to run with the land: (1) The grantor and the grantee must have intended the covenant to run with the land, as determined from the instrument of record; (2) the covenant must touch and concern the land with which it runs; and (3) the party claiming the benefit of the covenant and the party who bears the burden of the covenant must be in privity of estate.

13. **Restrictive Covenants.** Acquiescence in the violation of one restrictive covenant does not necessarily bar enforcement of other covenants in the agreement.

14. **Restrictive Covenants: Waiver.** The right to enforce restrictive covenants may be lost by waiver or acquiescence in the violation of the same, and whether there has been such a waiver or acquiescence depends upon the circumstances of each case.

15. ____: ____. Generally, mere acquiescence in the violation of a restrictive covenant does not constitute an abandonment thereof, so long as the restriction remains of any value, and a waiver does not result unless there have been general and multiple violations without protest.

16. **Restrictive Covenants: Waiver: Proof.** To prove waiver of a covenant, the defendant must show the plaintiff has waived the right to enforce the covenant through substantial and general noncompliance. The enforcement of valid restrictive covenants may be denied only

when noncompliance is so general as to indicate an intention or purpose to abandon the condition.

17. **Restrictive Covenants: Waiver.** The factors for determining whether a waiver of a restrictive covenant has occurred include, but are not limited to, whether those seeking to enforce the covenants had notice of the violation and the period of time in which no action was taken, the extent and kind of violation, the proximity of the violations to those who complain of them, any affirmative approval of the same, whether such violations are temporary or permanent in nature, and the amount of investment involved.

18. **Waiver.** Ordinarily, to establish a waiver of a legal right, there must be a clear, unequivocal, and decisive act of a party showing such a purpose, and the waiving party must have full knowledge of all material facts.

Appeal from the District Court for Douglas County: James M. Masteller, Judge. Affirmed.

Robert S. Sherrets and Thomas G. Schumacher, of Sherrets, Bruno & Vogt, L.L.C., for appellants.

Colin J. Bernard, of McGill, Gotsdiner, Workman & Lepp, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Stacy, J.

This appeal involves an action filed by a neighborhood association seeking to enforce a restrictive covenant. The district court granted summary judgment in favor of the neighborhood association, and the homeowners appeal. We affirm.

## FACTS

The Pine Tree subdivision in Omaha, Nebraska, was developed in 1980 and contains 32 residential lots. The subdivision's developer imposed restrictive covenants on all 32 residential lots, but those covenants expired in 2010.

Before the original covenants expired, the Pine Tree Neighborhood Association (PTNA) was incorporated and

organized under the laws of the State of Nebraska. Shortly after the original restrictive covenants expired, the PTNA, along with 22 of the 32 residential lot owners in the Pine Tree subdivision, entered into a "Declaration of Covenants, Conditions and Restrictions of Part of Pinetree, a Subdivision in Douglas County, Nebraska" (Declaration). According to the Declaration, 22 of the lot owners desired to "provide for the preservation of the values and amenities of Pinetree . . . for the maintenance of the character and residential integrity of the Subdivision," and therefore those owners declared:

[E]ach and all of the Lots shall be held, sold and conveyed subject to the following restrictions, covenants, conditions and easements, all of which are for the purpose of enhancing and protecting the value, desirability and attractiveness of the Lots, and the enjoyment of the residents of the Lots. These restrictions, covenants, conditions and easements shall run with such Lots and shall be binding upon all parties having or acquiring any right, title or interest in each Lot, or any part thereof, as more fully described herein.

Article I of the Declaration sets out the restrictive covenants in 16 numbered paragraphs, but only paragraph 9 is relevant here. It provides in part:

No boat, camper, trailer, auto-drawn or mounted trailer of any kind, mobile home, truck, aircraft, camper truck or similar chattel shall be maintained or stored on any part of a Lot (other than in an enclosed structure) for more than forty-eight (48) hours. No motor vehicle may be parked or stored outside on any Lot, except vehicles driven on a regular basis by the occupants of the dwelling located on such Lot.

Article II of the Declaration states the purpose of the PTNA is to promote the "health, safety, recreation, welfare and enjoyment of the residents of the Lots, including the enforcement of this Declaration." Article III of the Declaration provides the covenants and restrictions will run with and bind the

land for a term of 20 years. The Declaration was executed in the fall of 2010, and it bears the notarized signatures of the PTNA's president and its secretary, as well as the record owners of the 22 lots who agreed to be bound by the Declaration. The Declaration was recorded with the Douglas County register of deeds on November 8, 2010.

In December 2019, Charles Moses and Melissa Hill (collectively the homeowners) purchased lot 13 in the Pine Tree subdivision. It is undisputed that lot 13 is one of the lots subject to the restrictive covenants in the Declaration. In July 2020, the PTNA received a complaint that the homeowners had been continuously parking a recreational vehicle (RV) outside in the driveway next to their house. The PTNA notified the homeowners that doing so violated paragraph 9 of the Declaration, but the homeowners did not move the RV despite repeated requests.

### Lawsuit to Enforce
### Restrictive Covenant

In February 2021, the PTNA filed this action against the homeowners in the district court for Douglas County. The complaint alleged that the homeowners' lot was subject to a restrictive covenant that prohibits storing or parking any "'boat, camper, trailer, auto-drawn or mounted trailer of any kind, mobile home, truck, aircraft, camper truck or similar chattel'" on any part of their lot "'other than in an enclosed structure'" for more than 48 hours. The complaint alleged the homeowners had been continuously parking an RV on their lot, in violation of the restrictive covenant, and sought a permanent injunction enjoining such conduct.

In their answer, the homeowners admitted their lot is subject to the restrictive covenants in the Declaration, and they admitted they have been parking an RV in their driveway. But the homeowners denied that the PTNA was entitled to injunctive relief, based on several affirmative defenses. As relevant to the issues on appeal, the homeowners alleged

the restrictive covenants were unenforceable as a matter of law because they applied to fewer than all of the lots in the Pine Tree subdivision. Alternatively, the homeowners alleged the PTNA waived the right to enforce the covenants because it "continuously failed to enforce" known violations of the restrictive covenants in the past.

## CROSS-MOTIONS FOR
## SUMMARY JUDGMENT

The PTNA moved for summary judgment, asserting it was entitled to permanent injunctive relief as a matter of law. In response, the homeowners moved for summary judgment, asserting they were entitled to judgment as a matter of law on their affirmative defenses of unenforceability and waiver. At the hearings on the cross-motions for summary judgment, both sides offered exhibits that were received without objection. We discuss the relevant evidence later in our analysis.

On March 25, 2022, the district court entered a judgment, styled as an order, which summarized the evidence adduced and the arguments advanced on the cross-motions for summary judgment. As relevant to the issues raised on appeal, the district court identified only two disputed issues: (1) whether the restrictive covenants were enforceable and, if so, (2) whether the PTNA waived its right to enforce the restrictive covenants.

On the first issue, the court summarized the evidence adduced and concluded the PTNA had met its burden of showing the restrictive covenants in the Declaration were valid and enforceable. It further concluded the homeowners had "failed to meet their burden of establishing that any material factual issues remain on the question of enforceability of the covenants."

On the second issue, the court rejected the homeowners' contention that the PTNA had waived the right to enforce the restrictive covenants. Applying the standards discussed

in *Farmington Woods Homeowners Assn. v. Wolf*[1] and *Pool v. Denbeck*,[2] the district court concluded the homeowners had not produced sufficient evidence to create a genuine issue of material fact as to whether the PTNA waived its right to enforce the restrictive covenants.

The court therefore overruled the homeowners' motion for summary judgment, and it granted the PTNA's motion for summary judgment and permanently enjoined the homeowners from continuing to maintain, store, or park their RV outside on lot 13 in violation of the covenants. The homeowners filed this timely appeal, which we moved to our docket on our own motion.

## ASSIGNMENTS OF ERROR

The homeowners assign that the district court erred in granting the PTNA's motion for summary judgment and in overruling their cross-motion for summary judgment.

## STANDARD OF REVIEW

[1,2] An action to enforce restrictive covenants is equitable in nature.[3] On appeal from an equity action, an appellate court decides factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the trial court's determination.[4]

[3,4] An appellate court reviews a district court's grant of summary judgment de novo.[5] An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences

---

[1] *Farmington Woods Homeowners Assn. v. Wolf*, 284 Neb. 280, 817 N.W.2d 758 (2012).

[2] *Pool v. Denbeck*, 196 Neb. 27, 241 N.W.2d 503 (1976).

[3] *Estates at Prairie Ridge Homeowners Assn. v. Korth*, 298 Neb. 266, 904 N.W.2d 15 (2017).

[4] *Id*.

[5] *Slama v. Slama*, 313 Neb. 836, 987 N.W.2d 257 (2023).

that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[6] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.[7]

[5] Whether undisputed activities on the property violate a restrictive covenant presents an issue of law.[8]

## ANALYSIS

### Cross-Motions for Summary Judgment

[6,7] Because this action was resolved on cross-motions for summary judgment, we begin our analysis by reviewing the settled principles governing such proceedings. When reviewing cross-motions for summary judgment, an appellate court acquires jurisdiction over both motions and may determine the controversy that is the subject of those motions; an appellate court may also specify the issues as to which questions of fact remain and direct further proceedings as the court deems necessary.[9] Cross-motions for summary judgment should generally be considered separately, applying the same familiar standards that govern all summary judgment motions.[10]

---

[6] See, *id.*; *Heist v. Nebraska Dept. of Corr. Servs.*, 312 Neb. 480, 979 N.W.2d 772 (2022).

[7] *Estate of Block v. Estate of Becker*, 313 Neb. 818, 986 N.W.2d 726 (2023); *Sundermann v. Hy-Vee*, 306 Neb. 749, 947 N.W.2d 492 (2020).

[8] See *Southwind Homeowners Assn. v. Burden*, 283 Neb. 522, 810 N.W.2d 714 (2012).

[9] *Avis Rent A Car Sys. v. McDavid*, 313 Neb. 479, 984 N.W.2d 632 (2023).

[10] See, e.g., 10A Charles Alan Wright et al., Federal Practice and Procedure § 2720 at 352-53 (4th ed. 2016) (observing that "cross-motions [for summary judgment] must be considered separately" and "each party, as a movant for summary judgment, bears the burden of establishing that no genuine dispute of material fact exists and that the movant is entitled to a judgment as a matter of law").

This does not mean that overlapping issues in cross-motions may not be addressed together, but in doing so, a court must not lose sight of the burdens of proof imposed on the moving and nonmoving party.

[8,9] Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[11] The party moving for summary judgment must make a prima facie case by producing enough evidence to show the movant would be entitled to judgment if the evidence were uncontroverted at trial.[12] If the moving party makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law.[13]

Here, the PTNA moved for summary judgment, arguing the evidence was undisputed that (1) the homeowners' lot is one of the 22 lots in the Pine Tree subdivision bound by the restrictive covenants in the Declaration; (2) paragraph 9 of the Declaration unambiguously prohibits storing or parking campers, mobile homes, and camper trucks outside on any lot for more than 48 hours; and (3) the homeowners were continuously storing or parking their RV outside, in violation of such covenant.

We have reviewed the evidence and agree it shows that the homeowners' lot is subject to the restrictive covenants in the Declaration and that paragraph 9 of those covenants plainly prohibits storing or parking campers, mobile homes, and

---

[11] See, e.g., *Porter v. Knife River, Inc.*, 310 Neb. 946, 970 N.W.2d 104 (2022); *Wintroub v. Nationstar Mortgage*, 303 Neb. 15, 927 N.W.2d 19 (2019).

[12] See *Porter, supra* note 11.

[13] *Id.*

similar chattels outside on any lot for more than 48 hours. The homeowners do not dispute that they have been storing or parking their RV outside on their lot, in violation of the paragraph 9 covenant. The PTNA therefore presented a prima facie case showing it would be entitled to judgment if the evidence were uncontroverted at trial. This shifted the burden to the homeowners to produce evidence showing the existence of a material issue of fact that would prevent judgment as a matter of law.

In opposing the PTNA's motion for summary judgment, and in supporting their own cross-motion for summary judgment, the homeowners relied on the same evidence and advanced the same arguments. The homeowners argued they were entitled to judgment as a matter of law under either of two theories. First, they argued the restrictive covenants were per se unenforceable because they did not apply to every lot in the subdivision. Alternatively, they argued that if the restrictive covenants were enforceable, then the PTNA had waived the right to enforce the covenants under Nebraska law. We address each of these arguments in turn.

### Enforceability

[10,11] When enforcing restrictive covenants, they are to be construed so as to give effect to the intentions of the parties at the time they agreed to the covenants.[14] The language of a restrictive covenant must be interpreted in its entirety, and if it is unambiguous, the covenant shall be enforced according to its plain language and shall not be subject to rules of interpretation or construction.[15]

[12] For purposes of enforceability, there are generally three requirements for a covenant, whether affirmative or restrictive, to run with the land: (1) The grantor and the grantee must have intended the covenant to run with the

---

[14] *Estates at Prairie Ridge Homeowners Assn., supra* note 3.

[15] See *id.*

land, as determined from the instrument of record; (2) the covenant must touch and concern the land with which it runs; and (3) the party claiming the benefit of the covenant and the party who bears the burden of the covenant must be in privity of estate.[16]

In this case, no one contends that the restrictive covenant in paragraph 9 of the Declaration is ambiguous, and no one disputes that the restrictive covenants in the Declaration were intended to run with the land, that the covenant at issue touches and concerns the land, or that the PTNA and the homeowners are in privity of estate. Instead, the homeowners argue that the restrictive covenant at issue is unenforceable because only 22 of the 32 lot owners in the Pine Tree subdivision agreed to be bound by the Declaration.

The homeowners cite us no authority, nor are we aware of any, to support their contention that covenants created by fewer than all lot owners in a subdivision are per se unenforceable. Instead, the homeowners rely on authority that addresses a different issue—whether a subsequent change in the condition of the neighborhood has destroyed the original purpose and intent of parties who created restrictive covenants pursuant to a general scheme.[17] But that authority is not applicable here, because our analysis is focused on the enforceability of the 2010 Declaration, not the original covenants. The lot owners who agreed to be bound by the Declaration in 2010 were fully aware that the original covenants had expired and that fewer than all of the lot owners in the subdivision were entering the Declaration. Yet, the Declaration

---

[16] *Equestrian Ridge v. Equestrian Ridge Estates II*, 308 Neb. 128, 953 N.W.2d 16 (2021).

[17] See *Lund v. Orr*, 181 Neb. 361, 363, 148 N.W.2d 309, 310 (1967) ("[w]here the original purpose and intention of the parties who created the restriction, pursuant to a general scheme, has been destroyed by a change of condition of the surrounding neighborhood, and the restriction is no longer a substantial benefit to the residents, the restriction will not be enforced").

expressly recognized that restrictive covenants remained desirable for the purpose of enhancing and protecting the value, desirability, attractiveness, and enjoyment of the lots bound by the Declaration. And there is no evidence suggesting that after agreeing to the Declaration, the condition of the neighborhood changed in a way that prevents the covenants from being a substantial benefit to the residents who agreed to be bound by the Declaration.

It is a general principle of law that restrictive covenants on land can be created by contract,[18] and the covenants at issue here were created by contract via the Declaration. We therefore reject the homeowners' contention that the restrictive covenants in the Declaration are unenforceable as a matter of law because fewer than all lot owners in the Pine Tree subdivision entered into the Declaration. Instead, we agree with the district court's conclusion that in response to the PTNA's motion, the homeowners failed to establish a genuine dispute of material fact as to the enforceability of the restrictive covenants. Similarly, we conclude on the homeowners' cross-motion that they failed to present a prima facie case that the covenant is unenforceable.

## Waiver

Alternatively, in opposition to the PTNA's motion and in support of their own cross-motion, the homeowners argue that the PTNA has waived its right to enforce the restrictive covenant at issue. We understand the homeowners to present two somewhat-related waiver arguments. First, they broadly assert the PTNA has waived the right to enforce all the

---

[18] See, generally, Restatement (Third) of Property: Servitudes § 2.1 (2000) (recognizing restrictive covenants upon land can be created by owners of property via contract); 20 Am. Jur. 2d *Covenants, Etc.* § 152 (2015) (same). See, also, *Curtis Acres Assn. v. Hosman*, 22 Neb. App. 652, 859 N.W.2d 365 (2015); *1733 Estates Assn. v. Randolph*, 1 Neb. App. 1, 485 N.W.2d 339 (1992).

restrictive covenants by "engaging in selective enforcement"[19] regarding several covenants not at issue in this case. Second, they argue the PTNA has waived the right to enforce the restrictive covenant in paragraph 9 by failing to enforce other violations of that specific covenant.

To the extent the homeowners ask us to consider whether the PTNA has broadly waived its right to enforce any of the restrictive covenants in the Declaration, we decline their invitation. The homeowners have raised waiver as an affirmative defense to the PTNA's enforcement of the restrictive covenant in paragraph 9; they have not counterclaimed for a declaratory judgment as to the enforceability of any of the other restrictive covenants in the Declaration.

[13] Moreover, our cases addressing waiver as an affirmative defense generally focus only on conduct related to the specific restrictive covenant being enforced,[20] and other courts follow the same approach:

> The courts have consistently held that acquiescence in the violation of one covenant restriction does not bar enforcement of other, albeit similar, restrictions in the agreement. Most courts have repudiated a theory of abandonment when based on violations of other covenants, holding that an estoppel defense based on the alleged abandonment of a particular covenant restriction can only be supported by evidence of violations of that covenant.[21]

We therefore confine our analysis of the waiver defense to evidence of the PTNA's enforcement efforts regarding

---

[19] Brief for appellants at 18.

[20] See, e.g., *Farmington Woods Homeowners Assn., supra* note 1; *Pool, supra* note 2.

[21] 42 Am. Jur. Proof of Facts 3d 463 *Restrictive Covenant* § 15 at 493-94 (1997). See, also, *Ridgewood Homeowners Ass'n v. Mignacca*, 813 A.2d 965 (R.I. 2003) (recognizing that court's waiver analysis should focus on enforcement response to prior violations of covenant at issue, not unrelated covenants).

only the restrictive covenant at issue here: the covenant in paragraph 9 of the Declaration. Before discussing that evidence, we review the relevant principles of law governing waiver of the right to enforce a restrictive covenant.

[14-16] Under Nebraska law, the right to enforce restrictive covenants may be lost by waiver or acquiescence in the violation of the same,[22] and whether there has been such a waiver or acquiescence depends upon the circumstances of each case.[23] "Generally, 'mere acquiescence in the violation of a restrictive covenant does not constitute an abandonment thereof, so long as the restriction remains of any value, and . . . a waiver does not result unless there have been general and multiple violations without protest.'"[24] Thus, to prove waiver under Nebraska law, the defendant must show the plaintiff has waived the right to enforce the covenant through "substantial and general noncompliance."[25] The enforcement of valid restrictive covenants may be denied only when noncompliance is so general as to indicate an intention or purpose to abandon the condition.[26]

[17] This court has identified a nonexclusive list of factors to consider when determining whether a waiver has occurred:

> "whether those seeking to enforce the covenants had notice of the violation and the period of time in which no action was taken; the extent and kind of violation; the proximity of the violations to those who complain of them; any affirmative approval of the same; whether such violations are temporary or permanent in nature; and the amount of investment involved."[27]

---

[22] *Pool, supra* note 2.

[23] *Farmington Woods Homeowners Assn., supra* note 1.

[24] *Id*. at 286, 817 N.W.2d at 765, quoting 20 Am. Jur. 2d *Covenants, Etc.* § 229 (2005).

[25] *Id*., citing 21 C.J.S. *Covenants* § 75 (2006).

[26] *Farmington Woods Homeowners Assn., supra* note 1.

[27] *Id*. at 286-87, 817 N.W.2d at 765.

As it pertains to the PTNA's enforcement of the restrictive covenant in paragraph 9, the homeowners adduced evidence of potential violations on lots 22, 25, 26, and 28 in the Pine Tree subdivision. But it is undisputed that lots 25 and 26 are not subject to the covenants in the Declaration, and consequently, evidence that a boat, camper, or trailer was stored or parked on those lots in excess of 48 hours is simply irrelevant to our waiver analysis, as the PTNA cannot waive a right it never had.[28] We thus confine our analysis to the evidence of prior conduct on lots 22 and 28 that the homeowners claim violated the restrictive covenant in paragraph 9.

An affidavit from one of the homeowners states that lot 22 had a "boat and/or trailer stored on the property in the driveway in excess of 48 hours" and that the PTNA took no action to enforce the covenant against that lot's owners. There is no evidence in the record that the PTNA was aware of, or had received a complaint of, an alleged covenant violation on lot 22, and the PTNA secretary averred that lot 22 had "never maintained or stored a boat on its property in excess of 48 hours." Similarly, the owner of lot 22 averred he had owned the lot "for decades," and he "never owned a boat," and "never maintained or stored a boat on lot 22 in excess of 48 hours."

As to lot 28, the homeowners averred that a trailer was "oftentimes . . . stored on the property in the driveway in excess of 48 hours" and that the Association had not enforced the covenant against lot 28. The homeowners also introduced a photograph depicting a construction-type trailer parked on the driveway of lot 28, but they did not present evidence as to how long the trailer in the photograph was parked there. When shown the photograph, the PTNA secretary testified that she recalled the trailer was parked on lot 28 for just a

---

[28] See *State Bank v. Scoular-Bishop Grain Co.*, 217 Neb. 379, 349 N.W.2d 912 (1984) (waiver is voluntary and intentional relinquishment or abandonment of known existing legal right).

couple of days while the owners had their chimney rebuilt and that she did not consider it a violation. There was no other evidence that the PTNA was aware of, or had received complaints regarding, alleged violations of the paragraph 9 covenant by the owners of lot 28.

The evidence regarding lots 22 and 28 shows the existence of factual disputes regarding possible violations of the covenant in paragraph 9. But for purposes of responding to the PTNA's summary judgment motion, we must determine whether these factual disputes are material. In the summary judgment context, a factual dispute is material only if it would affect the outcome of the case.[29] And as we explain next, the factual disputes here would not affect the outcome of the case, so they are not material.

Even when we give the homeowners every reasonable inference from the evidence, it shows only that the owners of lots 22 and 28 may have violated the covenant in paragraph 9 in the past and that the PTNA did not protest or seek to enforce the covenant against the owners of either lot. But to prove their affirmative defense of waiver, the homeowners had to produce evidence showing not only "'general and multiple violations without protest'"[30] but also that the PTNA's noncompliance was "substantial" and "so general as to indicate an intention or purpose to abandon the condition."[31]

Even if the homeowners could ultimately convince a trier of fact that the owners of lots 22 and 28 had previously violated the covenant by parking or storing a boat or trailer on either lot for more than 48 hours, they have adduced no evidence showing that the PTNA was aware of these violations yet chose not to act.

---

[29] *Jacob v. Nebraska Bd. of Parole*, 313 Neb. 109, 982 N.W.2d 815 (2022).

[30] *Farmington Woods Homeowners Assn., supra* note 1, 284 Neb. at 286, 817 N.W.2d at 765, quoting 20 Am. Jur. 2d, *supra* note 24.

[31] *Farmington Woods Homeowners Assn., supra* note 1, citing 21 C.J.S., *supra* note 25.

[18] Ordinarily, to establish a waiver of a legal right, there must be a clear, unequivocal, and decisive act of a party showing such a purpose, and the waiving party must have full knowledge of all material facts.[32] But the homeowners adduced no evidence that the PTNA was aware of the alleged violations on lots 22 and 28, and consequently, evidence of those violations cannot, without more, support a conclusion that the PTNA's failure to protest such violations shows an intention or purpose to abandon the paragraph 9 covenant.

The homeowners rely heavily on our decision in *Farmington Woods Homeowners Assn.* to argue they have either proved their waiver defense as a matter of law or shown the existence of a genuine issue of material fact regarding waiver that precludes the entry of summary judgment in favor of the PTNA. But that case actually illustrates why they have failed to meet their burden of proof regarding the affirmative defense of waiver.

In *Farmington Woods Homeowners Assn.*, we reversed summary judgment in favor of the homeowners' association because we found genuine disputes of material fact as to whether a homeowners' association had waived its right to enforce a covenant that prohibited operating a business from a residence. Our analysis in *Farmington Woods Homeowners Assn.* focused heavily on evidence about what the association knew regarding prior violations.[33] Summarized, the evidence showed the homeowners' association (1) knew of the home daycare at issue in 2000 but took no action to enforce the covenant until 2010, (2) knew of another home daycare operating between 2000 and 2010 but took no action to enforce the covenant, (3) knew its president was operating a business from his home but took no action to enforce the covenant, and (4) should have known of other "'openly and notoriously'" operated businesses in the neighborhood, yet took no

---

[32] See *Nelssen v. Ritchie*, 304 Neb. 346, 934 N.W.2d 377 (2019).

[33] See, also, *State Bank, supra* note 28.

action to enforce the covenant.[34] Because this evidence showed the homeowners' association had actual and constructive knowledge of multiple violations yet took no action, we reversed summary judgment and remanded the cause for further proceedings on whether the association had waived the right to enforce the covenant at issue.

But here, even though there was evidence that the owners of lots 22 and 28 may have violated the covenant at issue, there was no evidence that the PTNA knew or should have known of such violations and failed to act. And without such evidence, there is nothing to support a reasonable inference that the PTNA knowingly or intentionally acquiesced in the prior violations and nothing to support the conclusion that the PTNA's lack of enforcement showed an intention or purpose to abandon the covenant.

On this record, we conclude as a matter of law that the homeowners failed to adduce evidence sufficient to prove a prima facie case of waiver on the cross-motion and failed to create a genuine issue of material fact regarding their affirmative defense of waiver in response to the PTNA's motion. The district court therefore did not err in granting the PTNA's motion for summary judgment or in overruling the homeowners' cross-motion for summary judgment.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.

---

[34] See *Farmington Woods Homeowners Assn., supra* note 1, 284 Neb. at 284, 817 N.W.2d at 763.