IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

EVERETT ESTATES V. GINGER WOODS HOME ASSN.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

EVERETT ESTATES, L.L.C., APPELLANT,

V.

GINGER WOODS HOME ASSOCIATION AND GINGER WOODS II HOME ASSOCIATION, APPELLEES.

Filed January 30, 2024.    No. A-23-287.

Appeal from the District Court for Douglas County: LEANNE M. SRB, Judge. Affirmed.

Heather Voegele and Andreanna C. Smith, of Voegele Anson Law, L.L.C., for appellant.

Richard P. Jeffries, of Cline, Williams, Wright, Johnson, & Oldfather, L.L.P., and Tavia Bruxellas McAlister, Senior Certified Law Student, for appellees.

PIRTLE, Chief Judge, and MOORE and BISHOP, Judges.

PIRTLE, Chief Judge.

INTRODUCTION

Everett Estates, L.L.C., appeals the order of the district court for Douglas County denying its motion for summary judgment and granting summary judgment in favor of Ginger Woods Home Association and Ginger Woods II Home Association (collectively "Ginger Woods") finding that Everett Estates was not a good faith purchaser of the disputed property. Everett Estates also appeals a subsequent order of the district court finding that it did not prove its adverse possession claim against Ginger Woods. Based on the reasons that follow, we affirm.

BACKGROUND

This case involves a dispute over ownership of a piece of property located in western Douglas County. On September 10, 2019, Everett Estates filed a complaint for declaratory relief against Ginger Woods, alleging that it purchased the property at issue from Smith & Johnson Land

- 1 -

Company, Ltd., in October 2017. According to the complaint, Smith & Johnson issued a partnership warranty deed for the benefit of Everett Estates to transfer the property. On October 18, 2017, Everett Estates recorded the partnership warranty deed with the Douglas County Register of Deeds. In 2018, Everett Estates intended to sell portions of the property and upon learning of the proposed sale, Ginger Woods claimed it had an interest in the property based on a partnership quitclaim deed dated June 15, 1993, it had from Smith & Johnson. The quitclaim deed was never recorded. Everett Estates alleged that from June 15, 1993, until October 2017, Smith & Johnson continuously, openly, and notoriously possessed the disputed property, including paying the real estate taxes; that at the time of purchasing the property from Smith & Johnson, Everett Estates was unaware of the existence of the quitclaim deed; and since October 2017, Everett Estates has continuously, openly, and notoriously possessed the property, including paying the real estate taxes. Everett Estates asserted it was the rightful owner of the property and requested a judgment quieting title to the property to Everett Estates.

Ginger Woods filed an answer, and subsequently an amended counterclaim, denying any knowledge of Everett Estates' ownership of the property and alleging that any partnership warranty deed issued by Smith & Johnson for the benefit of Everett Estates was a nullity because Smith & Johnson had no ownership interest in the real estate subject to said partnership warranty deed, having conveyed all of its right, title, and interest in the property to Ginger Woods in June 1993 pursuant to a partnership quitclaim deed. Ginger Woods alleged that it owned the property based on the quitclaim deed and further because it had been in continuous, open, and notorious possession of the property for more than 10 years. Ginger Woods alleged that Everett Estates has no interest in the property and that its cause of action should be dismissed with prejudice.

In response to Ginger Woods' amended counterclaim, Everett Estates filed an answer denying the allegations and asserting multiple affirmative defenses. Everett Estates alleged that Ginger Woods failed to state a claim upon which relief could be granted; that Everett Estates was the current owner through ownership by deed; that it was the current owner through adverse possession; that Ginger Woods' claim was barred by the doctrines of waiver, estoppel, and laches; that Ginger Woods abandoned the property at issue; that Ginger Woods disclaimed its interest in the property; and that Ginger Woods ratified Everett Estates' ownership in the property.

Both parties filed motions for summary judgment, asserting ownership of the property and asking the court to find it was entitled to judgment as a matter of law. A hearing was held on both motions.

The evidence at the summary judgment hearing showed that in June 1993 Everett L. Smith delivered a partnership quitclaim deed for the disputed property to William J. Fleissner, the president of Ginger Woods, for the benefit of Ginger Woods. Smith signed the deed as general partner of Smith & Johnson.

Kirk Hanson, an officer of Smith & Johnson in October 2017 and at the time of the hearing, testified in his deposition that Smith, his great-grandfather, was a general partner of Smith & Johnson but he did not know if he was a general partner in 1993. Hanson testified that in 1993, the property at issue was owned by Smith & Johnson, as well as prior to October 13, 2017, when the property was transferred to Everett Estates. Everett Estates was established in September 2016. In addition to being an officer of Smith & Johnson, Hanson was the managing member or president of Everett Estates. Hanson testified as to who the partners of Smith & Johnson were, as well as the

members of Everett Estates as of October 13, 2017, when the warranty deed was signed. On that date, Kirk Hanson Sr. (Hanson's father), Hanson Family Investments L.P. (Hanson's ownership interest), and Rhonda Hanson (Hanson's mother) were general partners of Smith & Johnson, as well as members of Everett Estates. In Hanson's affidavit he stated that "[a]t no time prior to October 13, 2017, was Everett [Estates] ever aware of any other deeds or instruments purporting to transfer any ownership interest in the Disputed Property."

Following the hearing, the court concluded that Everett Estates had notice of the 1993 quitclaim deed and was not entitled to protection as a subsequent good faith purchaser as a matter of law. It found, therefore, that Ginger Woods' 1993 quitclaim deed took priority over Everett Estates' 2017 warranty deed as a matter of law. The court sustained Ginger Woods' motion for summary judgment as to that issue.

The trial court further found there was contradictory evidence regarding Everett Estates' possession of the property and, therefore, a genuine issue of material fact existed which precluded judgment as a matter of law on Everett Estates' adverse possession claim. Additionally, the court found there was evidence regarding Ginger Woods' possession of the property which precluded judgment as a matter of law on Everett Estates' abandonment claim. Everett Estates' motion for summary judgment was overruled.

A bench trial was subsequently held to determine whether Everett Estates took ownership of the property through adverse possession between 2005 and 2015, and whether Ginger Woods abandoned the property. Hanson testified on behalf of Everett Estates. A Ginger Woods board member and a former Ginger Woods board president testified for Ginger Woods. During Hanson's testimony, Everett Estates offered the 2017 warranty deed into evidence. Ginger Woods objected on relevance grounds based on the court's previous summary judgment ruling. The court sustained the objection.

Following trial, the court found that Everett Estates' adverse possession claim failed because it failed to prove by a preponderance of the evidence that its possession of the property from 2005 to 2015 was exclusive and notorious. The trial court also found, and Everett Estates concedes, that no evidence was submitted to the court in relation to Everett Estates' abandonment claim and, therefore, Everett Estates failed to meet its burden of proof on that issue. The court entered judgment in favor of Ginger Woods and dismissed Everett Estates' complaint with prejudice.

ASSIGNMENTS OF ERROR

Everett Estates assigns that the trial court erred in (1) finding that it was not a bona fide purchaser of the property and (2) excluding the partnership warranty deed from evidence at trial.

STANDARD OF REVIEW

An appellate court reviews a district court's grant of summary judgment de novo. *Pine Tree Neighborhood Assn. v. Moses*, 314 Neb. 445, 990 N.W.2d 884 (2023). An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Id.* In reviewing a summary judgment, an appellate court views the evidence in the light most favorable

to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id.*

A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion. *Noah's Ark Processors v. UniFirst Corp.*, 310 Neb. 896, 970 N.W.2d 72 (2022). In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party. *Id.*

## ANALYSIS

*Good Faith Purchaser of Property.*

Everett Estates first assigns that the trial court erred in finding that it was not a bona fide or good faith purchaser of the property and granting summary judgment in favor of Ginger Woods.

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Pine Tree Neighborhood Assn. v. Moses, supra.* The party moving for summary judgment must make a prima facie case by producing enough evidence to show the movant would be entitled to judgment if the evidence were uncontroverted at trial. *Id.* If the moving party makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law. *Id.*

Everett Estates argues that it purchased the property from Smith & Johnson without knowledge of Ginger Woods' 1993 quitclaim deed, and it recorded its 2017 warranty deed with the register of deeds. As such, it contends it is a bona fide purchaser of the property entitled to protection under Neb. Rev. Stat. § 76-238 (Reissue 2018).

Section 76-238(1) provides in part:

[A]ll deeds, mortgages, and other instruments of writing which are required to be or which under the laws of this state may be recorded, shall take effect and be in force from and after the time of delivering such instruments to the register of deeds for recording, and not before, as to all creditors and subsequent purchasers in good faith without notice. All such instruments are void as to all creditors and subsequent purchasers without notice whose deeds, mortgages, or other instruments are recorded prior to such instruments.

Under our law, instruments which may be but are not recorded are void as to subsequent bona fide purchasers who record first. See, § 76-238; *Kimco Addition v. Lower Platte South N.R.D.*, 232 Neb. 289, 440 N.W.2d 456 (1989); *Mader v. Kallos*, 219 Neb. 579, 365 N.W.2d 408 (1985). A good faith purchaser of land is one who purchases for valuable consideration without notice of any suspicious circumstances which would put a prudent person on inquiry. *Caruso v. Parkos*, 262 Neb. 961, 637 N.W.2d 351 (2002); *Mader v. Kallos, supra.* The burden of proof is upon a litigant who alleges that he or she is a good faith purchaser to prove that he or she purchased the property for value and without notice. *Id.* This burden includes proving that the litigant was without notice, actual or constructive, of another's rights or interest in the land. *Id.*

Everett Estates argues that it is a subsequent good faith purchaser so its 2017 recorded warranty deed controls, and Ginger Woods' 1993 quitclaim deed is invalid as to ownership of the property. Everett Estates argues that because Ginger Woods' 1993 quitclaim deed was not recorded with the register of deeds, it was not in effect prior to Everett Estates recording its warranty deed on October 13, 2017. It further argues that because the 1993 quitclaim deed was not recorded, there were no suspicious circumstances that arose when conducting a title search on the property to put it on inquiry.

Everett Estates further argues that the evidence does not support Ginger Woods' contention that Smith's knowledge of the 1993 quitclaim deed was imputed to Smith & Johnson, so Smith & Johnson knew it could not convey the property to Everett Estates in 2017. Everett Estates claims that because Hanson testified he did not know if Smith was a partner of Smith & Johnson in 1993, the evidence did not establish that he was a partner at the time the 1993 quitclaim deed was executed. And, therefore, there was a genuine issue of material fact regarding Smith's role with Smith & Johnson when he signed the quitclaim deed.

Under the Nebraska Uniform Partnership Act, Neb. Rev. Stat. § 67-403(6) et seq. (Reissue 2018):

> A partner's knowledge, notice, or receipt of a notification of a fact relating to the partnership is effective immediately as knowledge by, notice to, or receipt of a notification by the partnership, except in the case of a fraud on the partnership committed by or with the consent of that partner.

Pursuant to § 67-403(6), notice to any partner is effective as notice to the partnership. See *Fitzgerald v. Community Redevelopment Corp.*, 283 Neb. 428, 811 N.W.2d 178 (2012). Smith signed and delivered the 1993 quitclaim deed as "General Partner" and, therefore, his knowledge of the deed was imputed to all partners of Smith & Johnson. We agree with the trial court that Hanson's testimony that he did not know if Smith was a partner in 1993 does not create a genuine issue of material fact as to his role at Smith & Johnson. Hanson's lack of knowledge does not dispute that Smith signed the 1993 quitclaim deed as a general partner. Based on the evidence, there is no dispute as to Smith's role at Smith & Johnson at the time the 1993 quitclaim deed was executed.

It is also undisputed, based on Hanson's deposition testimony, that Smith & Johnson had overlapping ownership with Everett Estates on the date the 2017 warranty deed was executed. On this date, Kirk Hanson Sr., Hanson Family Investments (Hanson's ownership interest), and Rhonda Hanson were general partners of Smith & Johnson, as well as members of Everett Estates. As the trial court noted, Hanson, the self-described president of Everett Estates, signed his name on the 2017 warranty deed as the grantor on Smith & Johnson's behalf. Thus, in accordance with § 67-403(6), these Smith & Johnson partners had imputed knowledge of the 1993 quitclaim deed and also as members of Everett Estates. Therefore, Everett Estates had implied or constructive notice of the 1993 quitclaim deed and is not entitled to protection as a subsequent good faith purchaser. Accordingly, Ginger Woods' 1993 quitclaim deed takes priority over Everett Estates' 2017 warranty deed as a matter of law. The trial court did not err in finding that Everett Estates was not a bona fide purchaser of the property and in entering summary judgment in favor of Ginger Woods on that issue. Everett Estates' first assignment of error fails.

*Evidence at Bench Trial.*

Everett Estates next assigns that the trial court erred in excluding the 2017 warranty deed from evidence at trial. Everett Estates offered the 2017 warranty deed into evidence, Ginger Woods objected based on relevance as to the matter of adverse possession, and the trial court sustained the objection.

Everett Estates argues that the 2017 warranty deed is relevant to its belief that it was the owner of the disputed property via title and supports its intent to appropriate and use the land to the exclusion of others. Ginger Woods contends that the premise of Everett Estates' argument is faulty because under the doctrine of adverse possession, a person or entity in possession of land does not need a deed to obtain legal title.

A party claiming title through adverse possession must prove by a preponderance of the evidence that the adverse possessor has been in (1) actual, (2) continuous, (3) exclusive, (4) notorious, and (5) adverse possession under a claim of ownership for a statutory period of 10 years. *Beckner v. Urban*, 310 Neb. 746, 968 N.W.2d 855 (2022). The acts of dominion over land allegedly adversely possessed must, to be effective against the true owner, be so open, notorious, and hostile as to put an ordinarily prudent person on notice of the fact that the lands are in the adverse possession of another. *Siedlik v. Nissen*, 303 Neb. 784, 931 N.W.2d 439 (2019). If an occupier's physical actions on the land constitute visible and conspicuous evidence of possession and use of the land, that will generally be sufficient to establish that possession was notorious. *Id.*

Clearly, possessing a deed is not necessary to prove adverse possession and further, a party's belief or intent based on a deed is not a factor to consider in determining whether that party adversely possesses property. However, assuming without deciding that the 2017 warranty deed was relevant to Everett Estates' adverse possession claim, any error by the trial court in refusing to admit the deed into evidence was not reversible error.

In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party. *Noah's Ark Processors v. UniFirst Corp.*, 310 Neb. 896, 970 N.W.2d 72 (2022). We conclude that Everett Estates would not have prevailed on its adverse possession claim even with the admission of the 2017 warranty deed and, therefore, it was not unfairly prejudiced.

The trial court found Everett Estates failed to prove its possession of the property from 2005 until 2015 was either "exclusive" or "notorious," two of the elements necessary to prove adverse possession. Everett Estates does not appeal these findings or argue how admission of the 2017 warranty deed into evidence would have helped prove either element.

Regarding exclusive possession, the trial court found that Everett Estates did not meet its burden because the evidence showed that throughout the relevant time frame Ginger Woods' residents had consistently used the disputed property for walking, fishing, and "cowboy breakfasts." The residents also consistently used the road on the property to access a boat ramp to launch and remove their boats. There were also locked gates preventing access to the property. Regarding the locked gates, the trial court stated:

> It is uncontested that [Everett Estates] and Smith & Johnson never had keys to the gates. It is also uncontested that, in 2016, [Everett Estates'] attorney sent a letter to [Ginger Woods] about how the locked gates prevented its access to the Property. It is hard to imagine how

one's possession can demonstrate the intention to appropriate and use the property to the exclusion of all others, when that [entity] is not able to access the property without trespassing on another's land or having the true owner unlock a gate. For these reasons, the Court finds [Everett Estates] did not have exclusive possession of the Property from 2005 until 2015.

The 2017 warranty deed, even if relevant, would not help prove exclusive possession for the relevant time frame for purposes of adverse possession.

Second, the 2017 warranty deed would not help Everett Estates demonstrate ten years of notorious possession. The trial court stated it "cannot find that [Everett Estates'] possession was sufficiently notorious until [Everett Estates] or Smith & Johnson began to make improvements on the property in 2016." Having failed to establish notorious possession before 2016, the 2017 warranty deed would not have added evidence of notorious possession for the required time frame.

We conclude that the admission of the 2017 warranty deed into evidence would not have changed the trial court's reasoning regarding Everett Estates' failure to prove exclusive and notorious possession of the property and would not have changed the outcome. Therefore, even if the trial court erred in excluding the 2017 warranty deed from evidence, it did not unfairly prejudice a substantial right of Everett Estates. Everett Estates' second assignment of error fails.

CONCLUSION

We conclude that the trial court did not err in finding that Everett Estates was not a good faith purchaser of the disputed property as a matter of law and in granting summary judgment in favor of Ginger Woods. We further conclude that even if the trial court erred in ruling the 2017 warranty deed was irrelevant, it was not reversible error. Both orders of the trial court are affirmed.

AFFIRMED.