IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

TORTORELLO V. HANNAGAN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

FRANK TORTORELLO, APPELLANT,

V.

REBECCA HANNAGAN, APPELLEE.

Filed April 30, 2024.    No. A-23-515.

Appeal from the District Court for Douglas County: TIMOTHY P. BURNS, Judge. Affirmed.

Michael J. Decker for appellant.

Sarah E. Cavanagh, of Houghton, Bradford & Whitted P.C., L.L.O., for appellee.

PIRTLE, Chief Judge, and RIEDMANN and BISHOP, Judges.

RIEDMANN, Judge.

## INTRODUCTION

At issue in this appeal is whether the doctrine of unjust enrichment requires a homeowner to repay funds provided by her significant other for the purchase and remodel of real estate once the romantic relationship has ended. Under the facts of this case, the district court held that it did not. Following our review, we affirm.

## BACKGROUND

Frank Tortorello and Rebecca Hannagan began a romantic relationship in 2014. In January 2015, they began living together in Virginia and shared living expenses. Later, the parties purchased a home in Virginia, and both were listed on the deed to the home and on the mortgage. The downpayment was shared between them. In 2017 or 2018, they sold that home and began renting a townhome, also in Virginia. The parties continued to share living expenses.

- 1 -

In 2019, Hannagan decided she wanted to move to Omaha to be closer to her parents. In December, she was offered employment in Omaha, and she began that employment in March 2020. Between being offered the position and her starting date, Hannagan began looking for a home in Omaha. Hannagan did most of the searching for a home, and if she saw something she liked she would send information to Tortorello and ask for his thoughts.

Eventually, Hannagan found a home she wished to purchase; it had a purchase price of $250,000. Hannagan worked with a lender to secure financing, and that lender required a downpayment. Tortorello was the sole source of funds for the downpayment. The lender required Tortorello and Hannagan to sign a form indicating that the funds Tortorello was providing were a gift. The lender provided the form to Hannagan; the loan would not be completed unless the form was signed.

The form had places for Tortorello and Hannagan to fill in various information, such as the amount of money at issue, the address of the property to be purchased, and the relationship of the parties. The preprinted portion notes that "no repayment of this gift is expected or implied either in the form of cash or future services of the recipient." The parties signed the form on February 25, 2020. Tortorello provided Hannagan with a cashier's check in the amount of $27,500 which was deposited into Hannagan's account; from that account a downpayment of $12,500, a deposit of $5,000, and closing costs of $14,353 were paid. Tortorello was not listed on the deed to the house in Omaha, nor was he listed on the mortgage.

The parties' plan was that Tortorello would eventually move to Omaha and share the residence with Hannagan. While living in the Omaha home, Hannagan began to remodel it. At one time, Tortorello sent Hannagan a check for $12,000 to help remodel the kitchen. This was the amount owed to the contractor who performed the work. Hannagan also replaced the carpet in the home, and Tortorello sent her money to pay for it.

Around March 2021, the parties discussed Hannagan leaving Omaha and moving back to Virginia. They discussed purchasing a residence in Virginia, but in May, Tortorello and Hannagan ended their romantic relationship. Hannagan sold the Omaha house in June for $300,000. The proceeds at closing were $51,013.13, the funds were paid to Hannagan, and she did not distribute any of the funds to Tortorello. Tortorello sent Hannagan an email asking her to repay the money he loaned her, stating he believed he was owed his portion of the downpayment and closing costs, half the cost of the kitchen remodel, and half the cost of the carpet replacement. Hannagan never responded.

Tortorello filed suit and in an amended complaint alleged that Hannagan had been unjustly enriched by her refusal to return the funds. Hannagan filed a motion for summary judgment. At a hearing on the motion for summary judgment, the parties offered into evidence depositions of each other, as well as copies of supporting documents such as emails, bank accounts, and financial planning documents. The district court found that there were no facts showing that the advance of money to Hannagan was anything other than a gift. It noted that Tortorello's only claim was that he believed, based on how the parties had allocated expenses in the past, that Hannagan should have known she was agreeing to reimburse him. The district court granted Hannagan's motion for summary judgment and dismissed Tortorello's amended complaint.

ASSIGNMENTS OF ERROR

Tortorello assigns that the district court erred in granting Hannagan's motion for summary judgment because she had not met her prima facie burden as the moving party and concluding Tortorello had not shown a material factual dispute sufficient to preclude summary judgment.

STANDARD OF REVIEW

An appellate court reviews a district court's grant of summary judgment de novo. *Pine Tree Neighborhood Assn. v. Moses*, 314 Neb. 445, 990 N.W.2d 884 (2023). An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Id*. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id*.

ANALYSIS

Tortorello assigns that the district court erred in granting summary judgment to Hannagan. Tortorello sought relief under a theory of unjust enrichment. To recover under a theory of unjust enrichment, the plaintiff must allege facts that the laws of restitution would recognize as unjust enrichment. *Ogallala Livestock Auction Market v. Leonard*, 30 Neb. App. 335, 968 N.W.2d 633 (2021). Unjust enrichment is a flexible concept. *Id*. But it is a bedrock principle of restitution that unjust enrichment means a transfer of a benefit without adequate legal ground. *Id*. It results from a transaction that the law treats as ineffective to work a conclusive alteration in ownership rights. *Id*. The mere fact that a recipient has obtained a benefit without paying for it does not of itself establish that the recipient has been enriched unjustly. *Kalkowski v. Nebraska Nat. Trails Museum Found.*, 290 Neb. 798, 862 N.W.2d 294 (2015) (citing Restatement (Third) of Restitution and Unjust Enrichment § 2(1) at 15 (2011)).

Hannagan sought summary judgment, alleging that the funds advanced to her for the home purchase and improvement were gifts. In her affidavit offered at the hearing, she stated that Tortorello voluntarily gave her the funds for the purchase of the house, that he never told her the money would need to be repaid, and that they both signed the gift form indicating the $27,500 from Tortorello was a gift. Hannagan asserted that while she resided in the Omaha home, Tortorello voluntarily made smaller gifts to assist her with home renovation and that he never told her he expected to be repaid. Hannagan noted a particular instance when Tortorello sent her money to install carpet even though she never requested that he do so. She offered the deposition of Tortorello in which he admitted he was not listed on the deed to the Omaha home or its mortgage.

In opposition to the motion for summary judgment, Tortorello offered Hannagan's deposition in which she admitted that the parties had shared daily household expenses since they began living together, and that the gift letter was a form required by the bank for Hannagan to receive the loan. He offered his answers to interrogatories in which he indicated that he did not want to be on the Omaha deed so Hannagan could have a tax shelter, that he was intending to move to Omaha and share the residence with Hannagan, and that during this time the parties wanted to make improvements to the home. Tortorello noted that he provided Hannagan with money to

remodel the kitchen and that Hannagan admitted there was no gift letter addressing these funds. According to Hannagan, the parties decided not to make Omaha their permanent home and to sell the Omaha property and Tortorello then put an offer on a residence in Virginia and deposited earnest money. According to Tortorello's deposition, Hannagan then advised him that she wished to live in Washington, D.C., and Tortorello ended the relationship.

Weighing the evidence in the light most favorable to Tortorello, we agree with the district court that the funds Tortorello gave to Hannagan for the purchase of the home, and renovations, were gifts. Tortorello signed a form letter indicating that the $27,500 he was giving to Hannagan to assist in purchasing the home was a gift and that he did not expect repayment. Tortorello argues that the gift letter was at the behest of the bank and that Hannagan did not specifically ask for such a letter. The fact remains that Tortorello signed a form that specifically stated the $27,500 was a gift and that he did not expect repayment.

As it relates to the other funds Tortorello sent Hannagan, such as money for carpet installation and to remodel the kitchen, Tortorello never informed Hannagan that those funds were loans that he expected to be repaid. Nor is there evidence of any discussion between the parties that the cost of remodeling the home would be divided between them. Tortorello argues that the parties' practice was to equally share the living expenses incurred, including house payments, when they owned a home together in Virginia. In his deposition that was received into evidence, Tortorello testified that the parties had an oral agreement, that there was context to it, in that they had practiced dividing costs once they began sharing a residence.

While the parties may have previously shared living expenses when they resided together, they were not residing together in the Omaha home. Tortorello does not contend that the parties had a conversation close in time to the purchase of the Omaha residence where they agreed to share the costs of the Omaha home. Tortorello was not listed on the deed or the mortgage to the Omaha residence. While we understand that the intent may have been for Tortorello to eventually move into the Omaha home, at all times relevant here, the parties were residing in separate residences in separate states. Tortorello voluntarily gave the money to Hannagan for home improvements, and there was no discussion of repayment or other conditions attached to the funds.

We are sympathetic to Tortorello's argument that he advanced the funds with the belief that he and Hannagan would continue to be in a relationship and would live together in the Omaha home. However, this mistaken belief does not turn funds that were given with no discussion of repayment into a loan that must be repaid. The Nebraska Supreme Court has previously noted, when discussing unjust enrichment, that "[t]he doctrine does not operate to rescue a party from the consequences of a bad bargain." *Washa v. Miller*, 249 Neb. 941, 950, 546 N.W.2d 813, 819 (1996).

Viewing the evidence in the light most favorable to Tortorello, there is no genuine issue of material fact or of the ultimate inferences that may be drawn from the facts in this case. Tortorello signed a form stating that he did not expect repayment for the amount loaned to purchase the home, and he voluntarily sent Hannagan the funds to remodel the home, with no discussion of repayment or other conditions. Hannagan is entitled to judgment as a matter of law, and the district court did not err in granting Hannagan's motion for summary judgment.

## CONCLUSION

Having found that the district court did not err in granting the motion for summary judgment, we affirm the judgment of the district court.

AFFIRMED.